IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| PHILLIP AND ELLEN COLLIER, | § | |
| ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:04-CV-086-K |
| | § | |
| WELLS FARGO HOME MORTGAGE | § | |
| AS SUCCESSOR IN INTEREST TO | § | |
| NORWEST AND PARKER SQUARE | § | |
| BANK, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed October 3, 2005. After review and consideration of the motion, response, reply, summary judgment evidence, pleadings on file in this case, and the applicable law, the court has determined that many of Plaintiffs' claims are time-barred, and that Defendant did not breach its mortgage contracts with Plaintiffs, did not violate RESPA, TILA, or the DTPA, and did not commit any of the common law torts complained of by Plaintiffs. Because Plaintiffs have not provided sufficient evidence raising a genuine issue of material fact regarding any of their claims, Defendant is entitled to judgment as a matter of law. Therefore, Defendant's Motion for Summary Judgment is **granted.**

1

## I.    Factual and Procedural Background

Plaintiffs are a group of homeowners who obtained 30 year adjustable rate mortgage loans from Parker Square Bank ("PSB").  When they obtained their mortgages, Plaintiffs elected to participate in a program offered by PSB that enabled them to make bi-weekly (instead of monthly) payments on their loans, effectively causing one extra payment to be made on the loans each year.  As part of the program, Plaintiffs opened bank accounts at PSB, from which their bi-weekly loan payments were automatically paid.  Plaintiffs "expected" that under this program they would pay off their mortgages in less than 20 years.  Plaintiffs have provided no documentation by Defendant that the term of their loans was less than 20 years.  Instead, they rely on their own expectation  and the testimony of PSB's former loan officer Donnie Park ("Park") that the loans were set up as 30 year adjustable rate mortgages with bi-weekly payments and early payoff.

In 1999, the predecessor to Defendant Wells Fargo Home Mortgage purchased the assets of Parker Square Bank, including the Plaintiffs' mortgage notes.  Between 1999 and 2000, Defendant reamortized each of the Plaintiffs' mortgage notes for the full 30 year term of the loans, maintaining the bi-weekly payments but lowering the amount of each payment.  Plaintiffs allege that Defendant made this change "quietly" and never told them that the loans had been reamortized to the 30 year maturity dates reflected in their mortgage notes.  Plaintiffs admit, however, that they received

2

"ARM Change Letters" showing the remaining number of payments on the note.

Each of these ARM Change Letters indicates that the number of payments remaining

(assuming that Plaintiffs continued making 26 payments per year) would cause the

loan to be fully paid off in 15-19 years.

Plaintiffs allege that they did not know of or consent to the change to their

loans by Defendant.  They assert claims for breach of contract, fraud, negligence,

negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act

("DTPA"), Tex. Bus. & C. Code §17.41, *et seq.*, violations of the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.,*violations of the

Truth in Lending Act ("TILA"),  15 U.S.C. § 1601, *et seq.*, and intentional infliction

of emotional distress.  Defendant moves for summary judgment on all of Plaintiffs'

claims.

## II.      Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other

summary judgment evidence show that no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party

bears the burden of identifying those portions of the record it believes demonstrate

the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25, 106 S.Ct.

at 2551-54.  Once a movant makes a properly supported motion, the burden shifts to

the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

## III.    Defendant's Motion for Summary Judgment

On various grounds, Defendant argues that Plaintiffs cannot produce sufficient evidence raising a material issue of fact concerning any of their claims, and that therefore Defendant is entitled to judgment as a matter of law.  Each of Plaintiffs' claims will be addressed separately below.

### A.    RESPA Claims

Defendant argues that Plaintiffs' RESPA claims must be dismissed, because 1) they are barred by limitations; and 2) Plaintiffs have not sufficiently alleged a RESPA violation.

RESPA's principle purpose is to protect home buyers from material non-disclosures in settlement statements and abusive practices in the settlement process. *Morequity v. Naeem,* 118 F. Supp.2d 885, 900 (N.D. Ill. 2000); *Cortez v. Keystone Bank, Inc.,* 2000 WL 536666, *10.   However, RESPA applies not only to the actual

4

settlement process, but also to the servicing of federally regulated mortgage loans. 12 U.S.C. § 2605; *Morequity,* 118 F. Supp. at 900; *Cortez,* 2000 WL 536666 at *10. Federally regulated mortgage loans include any loans secured by a first or subordinate lien on residential real property. 12 U.S.C. § 2602(1)(A); *Morequity,* 118 F. Supp. At 900. Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in § 10 [12 U.S.C. § 2609], and making the payments of principle and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(I)(3); *Morequity,* 118 F. Supp.2d at 901.

Under RESPA, the servicer of a federally regulated mortgage loan is required to provide a written response within 20 days of receiving a "qualified written request" for information about the servicing of such a loan unless the action requested is taken within that period. 12 U.S.C. § 2605(e)(1); *Rawlings v. Dovenmuehle Mortgage, Inc.,* 64 F. Supp.2d 1156, 1161 (M.D. Ala. 1999). A "qualified written request" is a written correspondence that enables the servicer to identify the name and account of the borrower and contains a statement of the reasons for the borrower's belief that the account is in error, or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B); *Rawlings,* 64 F. Supp.2d at 1161-62; *Vician v. Wells Fargo Home Mortgage,* 2006 WL 694740, *3 (N.D.

Ind. 2006).  Additionally, RESPA requires the servicer to take corrective action within 60 days of receiving the request, or to conduct an investigation and provide the borrower with a written explanation of the reasons for the action and the name and telephone number of an employee of the servicer to whom the borrower can direct any further inquiry on the matter.  12 U.S.C. § 2506(e)(2); *Cortez,* 2000 WL 536666 at *10; *In re Maxwell,* 281 B.R. 101, 121 (Bankr. D. Mass. 2002).

### 1.    Limitations Issues

Plaintiffs bring their RESPA claims under section 2605(e) of the statute.  The applicable statute of limitations for claims arising under 12 U.S.C. § 2605(e) is three years.  12 U.S.C. § 2614.  Plaintiffs filed their claims against Defendants in 2004.  Initially, Defendants argued that because Plaintiffs had all obtained their mortgages by 1986, Plaintiffs' claims expired at latest, in 1989.  However, as is stated above, RESPA also applies to the servicing of the loan.   *Morequity,* 118 F. Supp. at 900.  Plaintiffs have set forth evidence showing that they (or their attorneys) wrote to Defendant regarding their mortgages between January 2004 and March 2004.  Plaintiffs' RESPA claims were  filed in 2004, and are therefore timely filed under 12 U.S.C. § 2614.

### 2.    Sufficiency of RESPA Claims

For purposes of summary judgment, it is undisputed that Plaintiffs each sent Defendant a qualified written request as provided by section 2605(e)(1)(B) of RESPA.

The summary judgment record further shows that Defendant sent responses to the written requests of Plaintiffs Beavers, Burris, Collier and McKelvey, which satisfied the requirements of RESPA . Defendant's RESPA response letters to Plaintiffs Beavers, Burris, Collier and McKelvey explained Defendant's position that those Plaintiffs' loans had been serviced correctly, provided them with information showing how their notes were amortized and how their loan payments had been applied, noted that interest rate changes had occurred, and gave each of these four Plaintiffs a payoff statement for their notes. These letters were introduced into the record by Plaintiffs, and are not disputed by Defendant. Although Plaintiffs argue in a conclusory fashion that Defendant's response letters were "in substance no response at all," Plaintiffs cite no authority in support of their argument that Defendant's responses were insufficient under RESPA. The court finds that there is no genuine issue of material fact whether Defendant complied with the requirements of RESPA with respect to the claims of Plaintiffs Beavers, Burris, Collier and McKelvey.

Conversely, there is no proof in the summary judgment record showing that Defendant provided a RESPA response to the qualified written requests of Plaintiffs Bates and Fuller. Defendant argues, however, that even if it failed to respond to the RESPA requests of Plaintiffs Bates and Fuller, those claims still fail because there is no evidence that Plaintiffs Bates and Fuller (or any of the other Plaintiffs) have suffered actual damages flowing from any inadequate response or failure to respond.

*See* 12 U.S.C. § 2605(f)(1)(A) (damages awarded to borrower must be "as a result of" the lender's failure to comply with RESPA); *Byrd v. Homecomings Financial Network,* 407 F.

Supp.2d 937, 946 (N.D. Ill. 2005) (party must show actual damage from a violation of section 2605(e)(2)).

In their First Amended Complaint ("Complaint") filed September 13, 2004, Plaintiffs allege factually that Defendant improperly serviced their mortgages, costing them additional interest, extending the term of the loan obligations, extending the time their homes are subject to liens, and depriving them of the use of their money and assets. Plaintiffs allege no additional facts in support of their RESPA claim, and merely allege that "Defendant's actions are a violation of the Real Estate Settlement Procedures Act." Complaint at ¶ 21. By the time Plaintiffs sent Defendant their RESPA requests, the alleged improper servicing of their mortgages had already occurred. Plaintiffs have alleged no damages which were caused by Defendant's failure to respond or inadequate response to the RESPA requests, and thus have failed to sufficiently allege a violation of section 2605(e) of RESPA, which applies to the time period after Plaintiffs sent their qualified written requests for information regarding their loans. *Byrd,* 407 F. Supp.2d at 946. Therefore, for this additional reason, all of the Plaintiffs have failed to raise a material issue of fact regarding their RESPA claims, and Defendant is entitled to summary judgment on all of these claims.

8

### B.    TILA Claims

Defendant also moves for summary judgment on Plaintiffs' Truth in Lending Act claims, asserting 1) that these claims are barred by limitations; 2) that Plaintiffs failed to allege facts constituting a TILA claim; and 3) that even if Plaintiffs had alleged facts supporting a TILA claim, such claims would fail under the "subsequent occurrence" test.

The purpose of TILA is to promote the informed use of credit by mandating a meaningful disclosure of credit terms to consumers.  15 U.S.C. § 1601; *Cousin v. Trans Union Corp.,* 246 F.3d 359, 370 n.16 (5th Cir.), *cert. denied,* 534 U.S. 951(2001); *Riviere v. Banner Chevrolet, Inc.,* 184 F.3d 457, 459 (5th Cir. 1999).  Therefore, TILA requires that creditors disclose all credit terms to the consumer prior to the extension of credit, so that the consumer can make an informed decision about various credit options available, and avoid becoming unknowingly obligated to pay hidden and unreasonable charges imposed by lenders.  15 U.S.C. § 1601; *Landreneau v. Fleet Financial Group,* 197 F. Supp.2d 551, 555 (M.D. La. 2002); *see also* 12 C.F.R. § 226.17(b) (creditor shall make disclosures before consummation of the transaction).  Additional disclosure requirements apply to certain variable-rate transactions.  12 C.F.R. §§ 226.17(b), 226.19(b), 226.20(c).  A variable-rate adjustment with or without a corresponding adjustment to the payment in a variable-rate transaction secured by the consumer's principal dwelling is an event requiring new disclosures to the consumer.  *Id.* at §§

226.19(b), 226.20(c).  12 C.F.R. § 226.20(c)(1)-(5) require that the following disclosures be made at least 25 but no more than 120 days prior to a rate adjustment:

(1)     the current and prior interest rates;

(2)     the index values upon which the current and prior interest rates are based;

(3)     the extent to which the creditor has foregone any increase in the interest rate;

(4)     the contractual effects of the adjustment, including the payment due after the adjustment is made, and a statement of the loan balance; and

(5)     the payment, if different from that referred to in paragraph (c)(4) of this section, that would be required to fully amortize the loan at the new interest rate over the remainder of the loan term.

12 C.F.R. § 226.20(c)(1)-(5).

## 1.     Limitations Issues

Under TILA, a one-year statute of limitations applies.  15 U.S.C. § 1640(e); *FDIC v. Enventure V,* 77 F.3d 123, 125 (5th Cir. 1996); *Kelley v. Galveston Autoplex,* 196 F.R.D. 471, 477 (S.D. Tex. 2000).  Plaintiffs maintain that they received ARM Change Letters from Defendant that violated TILA. It is undisputed that Plaintiffs received ARM Change Letters from Defendant dated as follows:

| Plaintiff | ARM Change Letters Dated | Date Suit Filed |
|---|---|---|
| Beavers | February 10, 1999, February 25, 1999, January 5, 2000, January 8, 2002, January 3, 2003 | March 30, 2004 |

10

| Bates | July 13, 1999,<br>July 6, 2000,<br>July 5, 2001,<br>July 9, 2002,<br>July 2, 2003,<br>July 9, 2004 | August 31, 2004 |
|---|---|---|
| Burris | February 24, 1999,<br>January 5, 2000,<br>January 9, 2002,<br>January 3, 2003 | March 30, 2004 |
| Collier | July 13, 1999,<br>July 6, 2000,<br>July 5, 2001,<br>July 9, 2002,<br>July 2, 2003 | March 30, 2004 |
| Fuller | February 25, 1999,<br>January 13, 2000,<br>January 8, 2002,<br>January 3, 2003 | March 20, 2004 |
| McKelvey | February 24, 1999,<br>January 8, 2002,<br>January 3, 2003 | March 30, 2004 |

Plaintiffs argue that even though they filed the majority of their TILA claims after the expiration of the one-year statute of limitations, the limitations period should be tolled because Defendant allegedly concealed the changes to their loan amortization schedule. The court disagrees. Each of the ARM Change Letters listed above indicates the higher number of payments remaining on the note, and also reveals the change to lower payments that would take the full 30 years to finish paying off the note. Because they were informed of the number of payments outstanding, Plaintiffs knew or should have known upon receipt of the ARM Change

11

Letters that if they continued to make the new, lower bi-weekly payments their loans would not be paid off until the end of the full 30 year loan term.  The undisputed facts show that there was no concealment by Defendant that would warrant tolling of the statute of limitations.  Therefore, Plaintiffs' TILA claims accrued upon their receipt of each of the ARM Change Letters containing this information, and Plaintiffs cannot recover on any TILA claims brought more than one year following receipt of the pertinent ARM Change Letter.

When the above facts are viewed in the light most favorable to Plaintiffs, it is clear that nearly all of their TILA claims are barred by the one-year statute of limitations.  The only timely TILA claims are the claim of Plaintiff Bates based upon the ARM Change Letter dated July 9, 2004, and the claim of Plaintiff Collier related to the ARM Change Letter dated July 2, 2003.  All of the other TILA claims brought by Plaintiffs are barred by limitations, and must be dismissed.

## 2.    Merits of Plaintiffs Bates and Collier's TILA Claims

Plaintiffs Bates and Collier argue that the ARM Change Letters they received within the limitations period (on July 9, 2004 and July 2, 2003, respectively) violated TILA because they did not mention the change in the length of the note and resulting change in the finance charge.  The summary judgment evidence shows otherwise.  The Bates' July 9, 2004 ARM Change Letter shows that 310 payments (approximately 11

years of bi-weekly payments) are remaining on the loan at a current rate of 9%
interest.  Therefore, the Bates' ARM Change Letter does not fail to disclose the effects
of the reduction in the payment amount.  Defendant is entitled to summary judgment
on this TILA claim.

Similarly, the Collier's ARM Change Letter dated July 2, 2003 states that they
have 332 payments (more than 12 years of bi-weekly payments) remaining on their
loan, and that the current rate of interest was 5.75%.  This evidence establishes that
Defendant did not make a misrepresentation in the ARM Change Letter regarding the
length of the note or the finance charge.  Therefore, Defendant is also entitled to
summary judgment on this TILA claim. The court further notes that even if they were
not time-barred, all of the Plaintiffs' other TILA claims would also fail because each
of the ARM Change Letters in the summary judgment record disclosed to Plaintiffs
the information required by 12 C.F.R. § 226.20(c)(1)-(5).

### 3.    "Subsequent Occurrence" Test

Finally, Defendant argues that any changes made to Plaintiffs' mortgage loans
are not actionable under TILA's "subsequent occurrence" test, 15 U.S.C. § 1634.  This
section of the statue states that:

> If information disclosed in accordance with this part is subsequently
> rendered inaccurate as the result of any act, occurrence, or agreement
> subsequent to the delivery of the required disclosures, the inaccuracy
> resulting therefrom does not constitute a violation of this part.

*Id.*  Generally, subsequent events do not affect the validity of initial disclosures or

13

require the creditor to make further disclosures. *Begala v. PNC Bank,* 163 F.3d 948, 950-51 (6th Cir. 1998), *cert. denied,* 528 U.S. 868 (1999); *In re Ross,* 338 B.R. 266, 271-72 (Bankr. E.D. Pa. 2006); *In re Sheppard,* 299 B.R. 753, 760 (Bankr. E.D. Pa. 2003). However, the applicable regulations clarify that in certain circumstances, including variable rate adjustments, further disclosure is mandated. *Id., citing* 12 C.F.R. § 226.20.

Because Plaintiffs' loans were adjustable-rate transactions triggering further disclosures under 12 C.F.R. § 226.20(c), Defendants cannot rely on the "subsequent occurrence" rule to avoid liability on Plaintiffs' TILA claims. However, although the court finds that section 1634 of TILA does not apply here, Plaintiffs' TILA claims still fail because the undisputed evidence shows that the ARM Change Letters sent to each of the Plaintiffs met the disclosure requirements of section 226.20(c).

## C.    Intentional Infliction of Emotional Distress

Defendant next moves for summary judgment on Plaintiffs' state law claim for intentional infliction of emotional distress. Under Texas law, the elements of this claim are that 1) the defendant acted intentionally or recklessly; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's actions caused the plaintiff emotional distress; and 4) the resulting emotional distress was severe. *Hoffmann-La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004); *Bryant v. Lucent Technologies,* 175 S.W.3d 845, 849 n.1 (Tex. App. – Waco 2005, pet. filed).

14

To be liable for intentional infliction of emotional distress, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 817-18 (Tex. 2005), *quoting Hoffmann-LaRoche,* 144 S.W.3d at 445.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.  *Hoffmann-LaRoche,* 144 S.W.3d at 445.  It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous, and if reasonable minds may differ, the issue shall be submitted to the jury.  *Hoffmann-LaRoche,* 144 S.W.3d at 445; *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex. 1999).

Further, intentional infliction of emotional distress is a "gap-filler" tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress.  *Hoffmann-LaRoche,* 144 S.W.3d at 447, *citing Standard Fruit and Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998).  The tort is not intended to supplant other available statutory or common law remedies, and does not apply where the defendant intended to invade some other legally protected interest, even if emotional distress results.  *Id.*

15

Defendant contends that its conduct was not extreme and outrageous, and the court agrees.  Further, Plaintiffs have brought numerous other statutory and common law claims to redress their alleged injuries.  Because Defendant's alleged illegal conduct, if proven, would not go unremedied, there is no "gap" to be filled with a claim for intentional infliction of emotional distress.  *Id.*  Plaintiffs make no argument and cite to no evidence in their summary judgment response that would raise a genuine issue of material fact regarding this claim.  It is Plaintiffs' burden to set forth this evidence, and the court is not obligated to search the record in support of such proof that would permit them to avoid summary judgment.  *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).  By failing to brief this claim, Plaintiffs have waived it.  *Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 474 n.21 (5th Cir. 2006); *Communication Workers of Am. v. Ector County Hosp. Dist.,* 392 F.3d 733, 748 (5th Cir. 2004).  For all of the above reasons, the court enters summary judgment for Defendant on this claim.

### D.    Negligence and Negligent Misrepresentation Claims

Defendant next moves for summary judgment on Plaintiffs' claims for negligence and negligent misrepresentation, contending that these claims are barred under the economic loss rule.  The economic loss rule precludes recovery of economic losses in negligence cases when the loss is the subject matter of a contract between the parties.  *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494-95 (Tex. 1991);

16

*Tarrant County Hosp. Dist. v. GE Automation Services, Inc.,* 156 S.W.3d 885, 888 n.5 (Tex. App. – Fort Worth 2005, no pet. h.).   Where a plaintiff asserts a tort claim arising from a contract, the court looks to the substance of the claim, not the manner in which it was pleaded, to determine the type of action that is brought.   *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 617-18 (Tex. 1986); *Tarrant County Hosp. Dist.,* 156 S.W.3d at 895.   When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.   *Tarrant County Hosp. Dist.,* 156 S.W.3d at 895, *citing Southwestern Bell,* 809 S.W.2d at 494.

Defendant argues that the only potential basis for a duty of care would be the mortgage loan contracts with the Plaintiffs, and that no other basis for such a duty has been asserted.   In response, Plaintiffs argue that Defendant had a duty to disclose to them that the loans would not mature as early as they expected.   Plaintiffs contend that this duty arises 1) when a person voluntarily discloses partial information but fails to disclose the whole truth; 2) when a person makes a representation but fails to disclose new information that makes the earlier representation misleading or untrue; or 3) a person conveys a partial disclosure and conveys a false impression, citing *Columbia/HCA Healthcare Corp. v. Cottey,* 72 S.W.3d 735, 744-45 (Tex. App. – Waco 2002, no pet. h.).   The court finds that *Columbia/HCA* is distinguishable.   The portion of the opinion to which Plaintiffs cite discusses a claim of fraud by nondisclosure (an intentional tort) and when a duty to disclose arises.   72 S.W.3d at

17

744.  Furthermore, as Defendant points out, the misrepresentations at issue in the *Columbia/HCA* case were made prior to contract formation – not after the parties had entered into a contract, as is the situation here.  *Id.* at 744-45.  Finally, the *Columbia/HCA* case does not address or apply the economic loss rule, which is a consideration here because it is undisputed that the parties had a contractual relationship before any alleged tortious conduct by Defendant.  Even if Defendant had a duty to disclose as asserted by Plaintiffs, the court finds that Defendant disclosed in the ARM Change Letters that Plaintiffs' loans had more than a few years remaining (and gave precisely the exact number of payments remaining) before they would be fully paid.

Alternatively, Plaintiffs contend that they have a special relationship with Defendant that gives rise to a duty of care.  The Texas courts have held that there is no special relationship between a mortgagor and mortgagee.  *See UMLIC VP LLC v. T&M Sales and Environmental Systems, Inc.,* 176 S.W.3d 595, 612 (Tex. App. – Corpus Christi 2005, rev. denied) (Texas courts have found no special relationship between mortgagor and mortgagee); *Blanche v. First Nationwide Mortgage Corp.,* 74 S.W.3d 444, 453 (Tex. App. – Dallas 2002, no pet. h.) (same); *Cole v. Hall,* 864 S.W.2d 563, 568 (Tex. App. – Dallas 1993, writ dism'd w.o.j.) (same).  Thus, there is no duty of care that arises from Plaintiffs' mortgage contracts that would support a claim of negligence or negligent misrepresentation.

18

All of Plaintiffs claims, no matter how they are pleaded, arise from the mortgage contracts between the parties, and the damages claimed by Plaintiffs flow from Defendant's purported mishandling of Plaintiffs' mortgage accounts.  Therefore, the economic loss rule applies to bar Plaintiffs' claims for negligence and negligent misrepresentation.  The court will enter summary judgment for Defendant on these claims.

###    E.    DTPA Claims

Defendant moves for summary judgment on Plaintiffs' DTPA claims, asserting the well-established rule that a mere breach of contract does not constitute a false, misleading or deceptive act in violation of the DTPA.  *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex. 1996); *Bank One, Texas, N.A. v. Little,* 978 S.W.2d 272, 281 (Tex. App. – Fort Worth 1998, rev. denied).  Whether a breach of contract rises to the level of a misrepresentation sufficient to trigger DTPA protection is a fact-driven inquiry.  *Munawar v. Cadle Co.,* 2 S.W.3d 12, 18 (Tex. App. – Corpus Christi 1999, rev. denied); *Chilton Ins. v. Pate & Pate Enter. Inc.,* 930 S.W.2d 877, 890 (Tex. App.

– San Antonio 1996, writ denied).  Whether the facts, once ascertained, constitute a DTPA misrepresentation is a question of law.  *Id.*

The parties both acknowledge that the alleged nonperformance of the mortgage contracts by Defendant will not sufficiently establish the factual basis for a DTPA

claim.  To support their allegation of a misleading or deceptive act, Plaintiffs argue that Defendant knew Plaintiffs expected their loans to mature early, yet remained silent as to the changes in the servicing of the loans or sent misleading information to Plaintiffs in the ARM Change Letters they received.  Plaintiffs further argue that Defendant made misrepresentations in the formation of the lending contract that give rise to a DTPA claim.

The court disagrees with Plaintiffs' characterization of the summary judgment evidence.  The ARM Change Letters, offered as Plaintiffs' own summary judgment evidence, show that each of the loans had over ten years of payments remaining after the reamortization occurred.  Based upon this proof, the court cannot find that Defendant "remained silent," misled, or failed to disclose to Plaintiffs the remaining length of the loans.  This information was repeatedly provided to Plaintiffs in the ARM Change Letters.  Plaintiffs' allegation that misrepresentations were made when they took out the loans is merely an assertion that Defendant said it would perform the contract, and therefore misrepresented itself because it then failed to perform as required by the contract.  This factual contention does not turn a breach of contract into a DTPA claim. The court holds as a matter of law that these facts as alleged by Plaintiffs do not constitute a DTPA misrepresentation.  Therefore, the court will enter summary judgment for Defendant on Plaintiffs' DTPA claims.

**F.    Fraud**

20

Defendant further moves for summary judgment on Plaintiffs' fraud claims.  In support of its motion, Defendant argues that 1) Plaintiffs have failed to plead facts that would support a fraud claim; and 2) that Plaintiffs' fraud claims are barred by the applicable statute of limitations.

## 1.      Factual Allegations of Fraud

The elements of fraud are a material misrepresentation, which was false, and which was either known to be false when made, or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.  *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex. 1994); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex. 1990).  As an element of Plaintiffs' tort claim, they must plead and prove that Defendant knowingly made a false representation at the time they entered into their mortgage contracts.  *Id.*

A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998), *citing Schindler v. Austwell Farmers Coop.,* 841 S.W.2d 853, 854 (Tex. 1992).  The mere failure to perform a contract is not evidence of fraud.  *Id.*  Plaintiffs must present evidence showing that Defendant made representations with the intent to deceive, and no intention of performing as represented.  *Id.*  Further, Plaintiffs must show Defendant's intent *at the time the representation was made.  Id., citing Spoljaric v.*

21

*Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986) (emphasis added).   The summary judgment record contains no evidence of any intent to deceive or intent not to perform according to the contracts when they were entered into, and therefore Plaintiffs have not sufficiently supported their fraud claim.

Plaintiffs argue that Defendant committed fraud because it had a duty to disclose the changes to the length of the loans to them, and failed to disclose that information to them.   Plaintiffs correctly state that a failure to disclose information constitutes fraud *provided that there is a duty to disclose.   Glover v. Union Pacific Railroad Co.,* 187 S.W.3d 201, 218 (Tex. App. – Texarkana 2006, pet. filed); *Spring Window Fashions Division, Inc. v. Blind Maker, Inc.,* 184 S.W.3d 840, 875 (Tex. App. – Austin 2006, no pet. h.) (emphasis added).   Where there is no agreement or no other facts present to support the existence of a fiduciary or special relationship, a failure to disclose is not fraudulent.   *Glover,* 187 S.W.2d at 218.   As the court has stated at length above, Plaintiffs have established no legal duty owed to them by Defendant beyond their contractual relationship.   *See UMLIC,* 176 S.W.3d at 612 (Texas courts have found no special relationship between mortgagor and mortgagee); *Blanche,* 74 S.W.3d at 453 (same); *Cole,* 864 S.W.2d at 568 (same).   Therefore, Plaintiffs cannot salvage their fraud claim by asserting that there was a duty to disclose.

Even if Defendant had a duty to disclose to Plaintiffs the changes to the

22

amortization of their loans, the court finds that Defendant did disclose those changes to Plaintiffs. The summary judgment record establishes that Defendant issued ARM Change Letters to each of the Plaintiffs showing the number of payments left on their mortgage notes. In each case, the number of payments remaining were specifically enumerated and clearly exceeded the number of payments that would have been required to pay off the loans in 20 years or less, when Plaintiffs were making larger bi-weekly payments. Thus, even if Plaintiffs had shown there was a duty to disclose, the court would still enter summary judgment on this claim because that duty to disclose was met.

## 2.    Limitations Issues

Defendant's second argument regarding Plaintiffs' claims for fraud is that they are barred by the statute of limitations. Fraud claims are subject to a four-year limitations period. Tex. Civ. Prac. & Rem. Code § 16.004; *Vial v. Gas Solutions, Ltd.,* 187 S.W.3d 220, 229 (Tex. App. – Texarkana 2006, no pet. h.). A cause of action accrues for limitations purposes when the claimant's injury occurs. *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex. 1997); *Vial,* 187 S.W.3d at 229. To obtain summary judgment on a limitations defense, a defendant must 1) conclusively prove when the cause of action accrued; and 2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or should have

23

discovered, the nature of its injury.  *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex. 1999).

Plaintiffs do not dispute that they received ARM Change Letters indicating the number of payments remaining on their loans.  Each of the ARM Change Letters showed a far greater number of payments than would be required to pay off the loans in 20 versus 30 years.  Therefore, it is clear from the summary judgment record that Plaintiffs knew or should have known that Defendant had changed the repayment schedules for their loans as of the date they received their first ARM Change Letters. Each of the relevant ARM Change Letters and the dates the respective Plaintiffs filed suit are:

| Plaintiff | First ARM Change Letter Dated | Date Suit Filed |
|---|---|---|
| Beavers | February 10, 1999 | March 30, 2004 |
| Bates | July 13, 1999 | August 31, 2004 |
| Burris | February 24, 1999 | March 30, 2004 |
| Collier | July 13, 1999 | March 30, 2004 |
| Fuller | February 25, 1999 | March 20, 2004 |
| McKelvey | February 24, 1999 | March 30, 2004 |

All of the Plaintiffs first received notice from Defendant in 1999 that they had many more payments remaining on their loans than they had anticipated based upon the original bi-weekly payment amount.  The applicable statute of limitations for each Plaintiff's fraud claims would have expired in 2003.  None of the Plaintiffs brought

24

their fraud claims against Defendant until 2004, more than four years later. Therefore, Plaintiffs' fraud claims were untimely and are barred by the statute of limitations, Tex. Civ. Prac. & Rem. Code § 16.004.

### G.    Exemplary and Mental Anguish Damages

Defendants argue that Plaintiffs' claims for mental anguish and exemplary damages should be dismissed, because if they have a viable claim it arises from the mortgage contracts and not under any tort theory.   Mental anguish damages and exemplary damages are not recoverable for a breach of contract.  *Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex. 1995); *Royal Maccabees Life Ins. Co. v. James,* 146 S.W.3d 340, 351 (Tex. App. – Dallas 2004, rev. denied), *citing Latham v. Castillo,* 972 S.W.2d 66, 72 (Tex. 1998).

Plaintiffs respond that they should receive mental anguish and exemplary damages because their case "sounds in tort as well as contract."  (Plaintiffs' Brief at 16).   Recovery of such damages requires a finding of an independent tort with accompanying actual damages.   *Twin City,* 904 S.W.2d at 665.   The court has determined that there is no genuine issue of material fact regarding any of Plaintiffs' tort-based claims, and that Defendant is entitled to judgment as a matter of law on all of these claims.   Therefore, Plaintiffs' claims for exemplary and mental anguish damages are also dismissed.

### H.    Breach of Contract Claims

Defendant contends that it is also entitled to summary judgment on Plaintiffs' breach of contract claims because they are untimely, and thus barred by limitations. Defendant also argues in the alternative that it did not breach the mortgage contracts with Plaintiffs, and that Plaintiffs have not suffered any damages from the alleged breach.

### 1.    Limitations Issues

The parties agree that a four-year statute of limitations applies to actions for breach of contract. *Anderson v. Cocheu,* 176 S.W.3d 685, 689 (Tex. App. – Dallas 2005, rev. denied); *Morriss v. Enron Oil & Gas Co.,* 948 S.W.2d 858, 869 (Tex. App. – San Antonio 1997, no writ).  They further agree that most actions for breach of contract accrue at the time of the breach. *Anderson,* 176 S.W.3d at 689, *citing Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002).  Defendant argues that each of the Plaintiffs received notice of the reamortization of their loans when they received their first ARM Change Letters in 1999, and therefore Plaintiffs' breach of contract claims accrued at that time.  Thus, Defendant asserts that because the applicable statute of limitations expired in 2003, their breach of contract claims filed in 2004 were untimely.

Plaintiffs respond that their contractual claims were timely filed because 1) the mortgages were "continuing contracts"; 2) the discovery rule applies; and 3)

Defendant fraudulently concealed facts supporting their breach of contract claims. The court disagrees.  In a "continuing contract," the contemplated performance and payment is divided into several parts or, where the work is continuous and indivisible, the payment for work is made in installments as the work is completed.  *Hubble v. Lone Star Contracting Corp.,* 883 S.W.2d 379, 381-82 (Tex. App. – Fort Worth 1994, writ denied), *citing Godde v. Wood,* 509 S.W.2d 435, 441 (Tex. App. – Corpus Christi 1974, writ ref'd n.r.e.).  Plaintiffs have cited no cases treating a mortgage contract such as those at issue here as a continuing contract.  The court also has found no support for this assertion in Texas case law.

Plaintiffs' arguments regarding the discovery rule and alleged fraudulent concealment are also unavailing.  It is undisputed that Plaintiffs received ARM Change Letters in 1999 indicating that they had many more payments left on their mortgage notes than would have been required to pay them off under the original amortization schedule.  Presented with these facts, Plaintiffs knew or should have known at that time that Defendant had allegedly breached their mortgage contracts. There is no evidence in the record establishing that Defendant concealed this information.  In fact, the record shows the opposite – that Defendant disclosed this information in each of the ARM Change Letters Plaintiffs received.  Although Plaintiffs have shown that they (understandably) attempted to correspond with Defendant regarding the status of their mortgages before bringing suit, they still

27

needed to remain mindful of the approaching limitations period.  Because they failed

to file their claims within that

four-year period, Plaintiffs' breach of contract claims are barred by the statute of

limitations.

### 2.       Merits of Plaintiffs' Breach of Contract Claims

In the event that the statute of limitations does not preclude these claims, they

still fail on their merits.  The elements of an action for breach of contract are 1) a valid

contract; 2) the plaintiff performed or tendered performance; 3) the defendant

breached the contract; and 4) the plaintiff was damaged as a result of that breach.

*Case Corp. v. Hi-Class Business Sys. of Am.,* 184 S.W.3d 760, 769 (Tex. App. – Dallas

2005, no pet. h.); *Crowder v. Scheirman,* 186 S.W.3d 116, 118-19 (Tex. App. –

Houston [1[st] Dist.] 2005, no pet. h.).  A breach of contract occurs when a party fails

to perform an act that it has expressly or impliedly promised to perform.  *Case Corp.,*

184 S.W.3d at 769-70, *citing Methodist Hosps. of Dallas v. Corporate Communicators, Inc.,*

806 S.W.2d 879, 882 (Tex. App. – Dallas 1991, writ denied).

Defendant argues that it did not breach the mortgage contracts because they

are 30-year mortgage notes by their express terms.  Plaintiffs do not deny that the

contracts provide for a 30-year term, but respond that the reamortization of the notes

was a breach of contract, because the inclusion of language regarding the bi-weekly

payments "<u>equals</u> early pay off of the notes." (Plaintiffs' Brief at 18, emphasis in original). The court agrees with Defendant that by reamortizing the notes to provide for payoff in 30 years instead of 20, it did not breach the contracts since the parties agreed to a 30-year term. Plaintiffs were informed of this change in 1999, and still could have chosen to pay off their notes early. For these reasons, the court finds that Defendant did not breach the contracts, and further finds that Plaintiffs were not damaged by Defendant's actions, as they were informed of the change and could have voluntarily applied extra funds toward an early payoff but chose not to. As the court has stated, Plaintiffs' breach of contract claims are untimely. However, even if they had been timely filed, the court holds as a matter of law that these claims are without merit and are dismissed.

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**, and Plaintiffs' claims are hereby **dismissed with prejudice.** All other pending motions are **denied as moot.** Judgment will be entered by separate document.

**SO ORDERED.**

Signed May ____26th_____, 2006.

_s/Ed Kinkeade_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE